## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF SOUTH DAKOTA

| | |
|---|---|
| In re: ) | Bankr. No. 10-50113 |
| ) | Chapter 7 |
| JESSICA DIANE OGLE ) | |
| fka Jessica Diane Neal ) | |
| SSN/ITIN xxx-xx-7634 ) | |
| ) | |
| and ) | |
| ) | |
| JEREMY JAMES OGLE ) | |
| SSN/ITIN xxx-xx-5650 ) | |
| ) | |
| Debtors. ) | |
| ) | |
| JESSICA DIANE OGLE ) | Adv. No. 10-5006 |
| and JEREMY JAMES OGLE ) | |
| ) | |
| Plaintiffs ) | DECISION RE:  DEFENDANT'S |
| ) | MOTION FOR RETROACTIVE RELIEF |
| -vs- ) | FROM STAY AND DEBTORS- |
| ) | PLAINTIFFS' COMPLAINT ALLEGING |
| UNITED STATES ) | VIOLATION OF THE AUTOMATIC STAY |
| DEPARTMENT OF AGRICULTURE ) | |
| ) | |
| Defendant. ) | |

The matters before the Court are Debtors-Plaintiffs' First Amended Complaint in this adversary proceeding and Defendant United States Department of Agriculture's Rural Housing Service's Motion for Relief from Stay and Setoff in attendant Bankr. No. 10-50113.  The matters have been consolidated for resolution, and all issues, except damages arising from any violation of the automatic stay, have been submitted on stipulated facts and briefs.[1]  These are core proceedings under 28 U.S.C. § 157(b)(2). This Decision, the accompanying order in Bankr. No. 10-50113, and the accompanying order in this adversary proceeding constitute the Court's findings and conclusions under Fed.Rs.Bankr.P. 7052 and 9014(c).  As set forth below, Debtors' exemption claim in the tax refund at issue is subject to the government's right of setoff, and the government will be given relief from the automatic stay to effect the setoff.  Debtors will not be awarded any damages due to any violation of the automatic stay.

---

[1] The stipulated facts and the briefs were filed in the adversary proceeding only at the Court's direction.

I.
Facts.

The parties stipulated to the following facts:[2]

1.  Debtors, Jessica Ogle and Jeremy Ogle, have a debt owing to United States of America, by and through the Rural Housing Service (RHS), an agency of the United States Department of Agriculture (USDA), which was referred by RHS for setoff via the Treasury Offset Program (TOP) before Debtors filed bankruptcy.

2.  Debtors owed RHS at the time they filed bankruptcy $30,655.41.

3.  Debtors' debt owing to RHS is not secured by a lien outside of bankruptcy.

4.  The debt owing to RHS by Debtors is based upon a guaranteed loss claim which RHS paid.  On August 12, 2008, RHS paid a loss claim in the amount of $36,926.41 to South Dakota Housing pursuant to a loan guarantee made for the benefit of Jeremy and Jessica Ogle under the USDA RHS Loan Guaranteed Loan Program.  The indebtedness to RHS has its origins in a loan in the amount of $84,450.00 that was made to Jeremy and Jessica Ogle on August 25, 2006, by CorTrust Mortgage, Inc. for the purchase of residential real estate.

5.  On August 12, 2008, Borrowers were mailed a charge-off notification notifying Debtors that there was a debt owed to RHS.

6.  On September 20, 2008, Debtors were mailed a 60-day notification letter.  This notice gives an individual 60 days to assert any defenses to the validity or amount of the indebtedness owing and further provides that if the individual does not respond or assert any such defenses, that the delinquent indebtedness will be referred to the Department of Treasury for offset against any federal payments that may be due the debtor in the future.

7.  Debtors did not respond to the letter sent on September 20, 2008, nor did they challenge the validity of the debt owing to RHS or assert any defenses; accordingly, the indebtedness owing in the amount of $36,926.41 was certified to the Treasury Offset Program (TOP) on December 13, 2008.  Certification indicates that RHS has notified the United States Department of Treasury (Treasury or Department of Treasury) that it has a valid delinquent indebtedness with the Debtors and that the amount is a true and accurate statement of the balance due.

8.  Debtors filed Chapter 7 bankruptcy on March 26, 2010.

---

[2]  The stipulated facts are presented as the parties filed them, with one editorial note.

9.  Debtors are not challenging any notice requirements relating to the TOP or the offset taken under the TOP by Treasury.

10.  On March 29, 2010, the US Attorney's office notified the RHS state office of the bankruptcy filing.

11.  On March 30, 2010, RHS state office emailed Connie Kremer with the Centralized Serving Center (CSC) that Debtors had filed bankruptcy.

12.  CSC is a servicing center for RHS which services the debt owed to RHS.  Part of CSC's obligation as the servicing center is the collection of debt owing to RHS.  USDA Rural Development is the umbrella agency over Rural Housing Service that administers the various loan and grant programs through the Rural Housing Service, Rural Utilities Service, and Community and Business Programs.  RHS handles the single family and multi-family housing programs.

13.  On April 13, 2010, as part of the TOP, the Department of Treasury offset Debtors' 2009 tax return in the amount of $7,856.00.

14.  On or about April 16, 2010, via a letter dated April 16, 2010, Debtors were notified by the Department of Treasury of an offset from their 2009 tax return in the amount of $7,856.00, and that the money offset went to pay debt owing to RHS.

15.  On May 3, 2010, RHS received from the Department of Treasury the payment discussed in paragraph 13 through the Treasury Offset Program (TOP).  RHS through it[s] servicing center, CSC, utilizes an automated posting process that is an integral part of its Loan Servicing Accounting System.  RHS is not notified of payments until the date the payment is received from Treasury and posted to the account.  Accordingly, May 3, 2010, was the date that RHS was notified of the offset.

16.  On May 3, 2010, the $7,856.00 was posted to Debtors' account with RHS.  RHS received a net offset in the amount of $7,840.00 as Treasury charged a $16.00 fee to offset.  After funds are posted for offset, the lists of offsets is reviewed manually to determine if any of the offsets were taken from individuals in bankruptcy.  If an individual is in bankruptcy, the funds are manually adjusted to place them in an unapplied account.

17.  Funds cannot go directly into an unapplied account because there are two different accounting systems.  One accounting system, FiServ, used by CSC is set up for the collection of loss claims.  The Finance Office's accounting system, GLS, has remained the system of record.  Accordingly, FiServ does not receive the payments directly from Treasury, the payments are added to FiServ in nightly updates from the Finance Office.  A daily balance between FiServ and GLS is required.  To show FiServ balances with the Finance Office's accounting system, the money must initially be applied on the account and can be moved to the

unapplied account after the two systems balance.

18. On May 5, 2010, CSC realized the funds had been applied to Debtors' account while they were in bankruptcy and moved the funds to an unapplied account given the Borrowers were in bankruptcy.

19. Attached as Exhibit 2 is a letter mailed by Debtors' counsel to USDA on June 1, 2010. USDA is not agreeing to the facts alleged by attaching the letter but is not contesting the letter was sent.

20. The US Attorney's Office for the District of South Dakota first became aware of the offset from the 2009 tax refund via the allegations contained in Debtors' adversary complaint in ADV 10-05006.

21. On July 20, 2010, a discharge was entered in Debtors' Chapter 7 bankruptcy.

22. On July 28, 2010, a summons was filed in ADV 10-05006.

23. After discharge, CSC moved the debt from the unapplied account and credited it to Debtors' debt owing to RHS.

24. The 2009 tax return covers the tax year beginning January 1, 2009 and ending December 31, 2009.

25. Given the amount of the debt owing to RHS, following the offset of the $7,856.00, Debtors did not receive a refund.

26. Attached as Exhibit 1 to the Stipulated Facts is an accurate representation of the tax return Debtors filed for the tax year 2009. The IRS received the electronically filed 2009 tax return on April 8, 2010.

II.
Application of § 553(b).

Debtors have urged the Court to conclude the funds RHS set off can be recovered under 11 U.S.C. § 553(b), which governs certain setoffs within 90 days before a bankruptcy petition is filed.[3]  For the date of the setoff, Debtors urge the Court to adopt December 31, 2009, based on the accrual of Debtors' entitlement to a tax refund that day.

The Court declines to adopt Debtors' reasoning regarding the date of the setoff for application of § 553(b).  Foremost, the parties stipulated, "On April 13, 2010, as part of the TOP, the Department of Treasury offset Debtors' 2009 tax return in the

_____

[3] Debtors raised § 553(b) as part of their claim the full tax refund was property of the estate, not just the portion not claimed exempt.  The Court does not specifically decide the "property of the estate" issue herein.

amount of $7,856.00."  Second, § 553(b) differentiates between when the debts are considered mutual and when the setoff occurs.  There is no statutory presumption the setoff occurs when the debts become mutual.  Therefore, since the initial setoff occurred April 13, 2010, which was after Debtors' petition date of March 26, 2010, § 553(b) does not apply.

III.
Impact of § 522(g) or (h).

Debtors assert 11 U.S.C. § 522(g) allows them to exempt property that might otherwise be the subject of a setoff and § 522(h) allows them to recover a setoff directly if the trustee does not attempt to recover a setoff.   They further argue, "[t]o rule that property which has been setoff can never become property of the estate, would render [these two subsections] meaningless."

While not directly so stating, it appears Debtors are referring to a trustee's ability to recover certain pre-petition setoffs under § 553, and a debtor's ability under § 522(h) to recover certain pre-petition setoffs under § 553 if the trustee does not, and claim the recovered funds exempt.  Subsections 522(g) and (h) refer to other avoidance provisions, but Debtors only referred to § 553 in their brief.  Further, as noted above, § 553(b) does not apply in this case because the setoff did not occur pre-petition.  Thus, we are left by default to consider whether the interplay between § 522(g) or (h) and § 553(a) allows Debtors to either prevent or recover a post-petition setoff by the federal government.

As noted *In re Davicter Enterprises, Inc.*, 248 B.R. 794, 797 (Bankr. S.D. Ill. 2000), the provisions of § 553(a) are

> intended to prevent creditors from trafficking in claims against the debtor to effect a setoff. *See* 3 *Norton Bankr.L. & Prac.2d*, § 63:9, at 63-40; *Flanagan Bros.*, 47 B.R. at 303.  In the absence of such restrictions, those indebted to the debtor would have an incentive to purchase claims against the debtor from third-party creditors, most likely at a discount, in order to reduce their indebtedness through exercise of the acquired setoff rights. *See* 4 *Collier on Bankruptcy*, ¶ 553.03 [5][a][i], at 553-54. Allowing a creditor to create a setoff in this manner would contravene the equitable purposes underlying setoff and create an unfair advantage at the expense of other creditors. *See id.; Flanagan*.

Subsection 553(a)(1) provides a setoff right is not preserved if the creditor's claim is disallowed.  RHS's pre-petition claim against Debtors has not been disallowed, so that subsection does not apply.  Subsection 553(a)(2)(A) does not preserve a setoff right if the claim was transferred post-petition to the creditor seeking the setoff,

*Davicter Enterprises,* 248 B.R. at 796-97, and § 553(a)(2)(B) does not preserve a setoff right if the claim was transferred to the creditor seeking the setoff within 90 days before the petition was filed. *Id.* at 797 n.4. RHS's claim was not assigned or transferred to it either pre or post-petition, so § 553(a)(2) does not apply.

Only § 553(a)(3) remains for consideration. Section 553(a)(3) prevents a creditor from incurring a debt within 90 days of bankruptcy for the purpose of obtaining a right of setoff against the debtor. *Id.* The parties have stipulated the government became indebted to Debtors on December 31, 2009, the end of the 2009 tax year. Debtors are presumed to have been insolvent on that date, since it is within the 90-day pre-petition window. 11 U.S.C. § 553(c). The last element of § 553(a)(3) is the debt owed to the debtor was incurred "for the purpose of obtaining a right of setoff against the debtor," with certain inapplicable exclusions. 11 U.S.C. § 553(a)(3)(C). There is no evidence RHS became indebted to Debtors for the purpose of obtaining a setoff right. To the contrary, the funds Debtors became entitled to were solely by operation of law. Therefore, none of the setoff exceptions under § 553(a) apply, and thus there is no action Debtors may exercise under § 522(g) or (h) to prevent or undo the government's setoff. *Compare Kroh Bros. Development Co. v. Commerce Bank of Kansas City (In re Kroh Bros. Development Co.)*, 86 B.R. 186, 191-92 (Bankr. W.D. Mo. 1988); *The Englander Co. v. City Mattress of Amherst, Inc. (In re U.S. Bedding Co.)*, 52 B.R. 875, 878 (Bankr. Cal. 1985).

IV.
Allowance of Setoff Weighed Against Debtors' "Fresh Start."

Debtors penultimate argument is RHS's setoff rights must be weighed against the impact the setoff will have on Debtors, who hoped to use their 2009 federal income tax refund for their "fresh start" after bankruptcy. A creditor's setoff rights preserved by § 553(a), however, are not subject to even "compelling circumstances." *United States v. Krause (In re Krause)*, 261 B.R. 218, 223 (B.A.P. 8th Cir. 2001). Instead, the creditor establishes its right to a setoff by demonstrating:

1. the debtor has a claim against the creditor and the claim arose before the petition in bankruptcy was filed;

2. the creditor has a claim against the debtor and the claim arose before the petition in bankruptcy was filed;

3. the claims are mutual obligations; and

> 4. the creditor would have the right to offset its claim under nonbankruptcy law.

*Id*. at 222. Further, the amount subject to setoff is deemed a secured claim. 11 U.S.C. § 506(a). Accordingly, notwithstanding earlier decisions to the contrary, this Court concludes in a chapter 7 case it does not have the authority under § 553(a) and § 506(a) to equitably adjust what these statutes prescribe. Whether the creditor is entitled to relief from the automatic stay to exercise that setoff is a separate question discussed below.

V.
Relief from the Automatic Stay.

The key issue presented by RHS is whether it may have relief from the automatic stay for its setoff. Subsection 362(a)(7) specifically provides the stay applies to setoffs.[4]

The Court is satisfied RHS has shown it was entitled to set off the 2009 tax refund against the debt it was owed. Cause for relief from the stay to exercise a setoff exists once a creditor establishes the four elements for a setoff, which Debtors do not dispute RHS has done. At that point, the debtor or case trustee must offer adequate protection for the creditor's interest in the funds available for setoff. *In re Olson*, 175 B.R. 30, 33 (Bankr. D. Neb. 1994). Debtors in this case cannot do so. They have no replacement collateral or other adequate protection to offer RHS to protect its secured claim created by the right of setoff. 11 U.S.C. § 506(a). Moreover, as noted above, § 553(a) clearly states *nothing* in title 11 shall alter a creditor's setoff rights. Accordingly, notwithstanding earlier decisions to the contrary, this Court holds it does not have equitable authority to forestall or modify RHS's setoff rights in this chapter 7 case and relief from stay is appropriate.[5]

Any such relief from stay would, of course, be retroactive, or as many courts say, the Court would annul the stay as to setoff actions taken before relief was obtained. *In re Campbell*, 356 B.R. 722, 724-27 (Bankr. W.D. Mo. 2006)(citations therein).

---

[4] Were only the setoff of income tax liabilities at issue, the government would not need relief from the stay. 11 U.S.C. § 362(b)(26); *In re William S. Maines*, Bankr. No. 10-21912 JHW, 2010 WL 3984641, at *2 (Bankr. D.N.J. Oct. 8, 2010).

[5] Whether the Court may equitably adjust a creditor's setoff rights in a chapter 11, 12, or 13 case is a question for another day. *See, e.g., United States v. Gould* (*In re Gould*), 401 B.R. 415 (B.A.P. 9th Cir. 2009), *aff'd*, 603 F.3d 1100 (9th Cir. 2010).

-8-

"Bankruptcy courts have the power to annul an automatic stay retroactively for cause pursuant to 11 U.S.C. § 362(d)(1) in order to rehabilitate stay violations." *Bunch v. Hoffinger Industries, Inc*. (*In re Hoffinger Industries, Inc*.), 329 F.3d 948, 951-52 (8th Cir. 2003).

The several factors to consider when an annulment of the stay or retroactive relief from stay is at issue weigh in RHS's favor. *Campbell*, 356 B.R. at 725. In particular, the Court finds neither party acted in bad faith; there was no equity in the refund when the amount of the refund is compared to the amount of RHS's claim against Debtors; Debtors are not reorganizing; RHS otherwise has grounds for relief; the parties did not stipulate to any detrimental actions either took in reliance on the stay remaining in effect; and RHS moved promptly for relief when the issue surfaced. Moreover, this Court has not experienced the federal government's often being in the position of needing retroactive relief. *LaBarge v. Vierkant* (*In re Vierkant*), 240 B.R. 317, 322-25 (B.A.P. 8th Cir. 1999) (retroactive relief from the automatic stay should be granted sparingly and only in compelling circumstances). Accordingly, the stay is retroactively modified in this case to rehabilitate the government's at least technical violation of the stay.

VI.
Setoff of Future Tax Refunds.

Finally, Debtors have asked the Court to declare the federal government cannot set off any of their future federal income tax refunds against a pre-petition claim held by the government. Any future tax refunds are not property of this bankruptcy estate; thus, this Court does not have jurisdiction over them. Further, neither party asked the Court to determine the extent to which the federal government's pre-petition claim has been discharged. Accordingly, this issue is also a question for another day (and perhaps another court).

An order will be entered in the main case granting RHS retroactive relief from the stay. An order will also be entered in this adversary proceeding dismissing Debtors-Plaintiffs' First Amended Complaint, and no damages will be awarded to them.

Dated: February 14, 2011

BY THE COURT:

Charles L. Nail, Jr.
Bankruptcy Judge

On the above date, a copy of this document
was mailed or faxed to the parties shown on
the Notice of Electronic Filing as not having
received electronic notice.

Frederick M. Entwistle
Clerk, U.S. Bankruptcy Court
District of South Dakota

NOTICE OF ENTRY
Under Fed.R.Bankr.P. 9022(a)

This order/judgment was entered
on the date shown above.

Frederick M. Entwistle
Clerk, U.S. Bankruptcy Court
District of South Dakota